In the Matter of the Claim of BERNICE MARSH, Respondent. MARTIN P. CATHERWOOD, as Industrial Commissioner, Appellant.

Third Department, January 17, 1963.

528

*Louis J. Lefkowitz, Attorney-General (Samuel Stern* and *Paxton Blair* of counsel), for appellant.

*Henry J. Metzner* for respondent.

BERGAN, P. J.  Following the decision of this court in *Matter of Sellers (Catherwood)* (13 A D 2d 204), which laid down certain definitive criteria for " prevailing " wages within section 593 (subd. 2, par. [d]) of the Labor Law, the appellant Industrial Commissioner undertook to prescribe for administrative purposes new standards by which prevailing wages should be determined.

The statute itself provides that a refusal to accept employment shall not be deemed without good cause if the wages, hours, or conditions offered " are substantially less favorable " than those " prevailing for similar work in the locality " (§ 593, subd. 2, par. [d]).

In *Sellers* (p. 207) we held that the median wage paid for similar work was not the " prevailing wage " for the reason that a wage is not prevailing " when substantially one half of the workers are receiving less and substantially one half are receiving more." To be " prevailing ", we held, " it must appear that at least a majority of workers in similar employment are receiving approximately that wage."

Under the Commissioner's direction a special bulletin was issued by the department January 2, 1962 for the guidance of the administrators of unemployment insurance covering " New Standards " of prevailing wages and stating that the decision in *Sellers* required " important changes of the prevailing wage standards ". One new standard was that when a substantial number of workers " such as 40% or more, is paid the same rate of wages, it can be said that such wages represent the ' prevailing ' rate."

The other new standard which becomes significant in the case before us was to be applied to occupations where the wage distribution is not concentrated, so that there is no preponderance of workers who are paid the same rate.  The court's ruling could be met in this situation, the bulletin noted " by considering

the positions of all workers in the classification and by using as a springboard the wages of workers in the middle position, that is, the middle 50% of the workers. The weighted average of the wages of this middle 50% group identifies then the prevailing rate, and it can be said that each wage within this group approximates that rate. The ' substantially less favorable ' concept furnishes again the basis for assuring that ' at least a majority ' are receiving wages which satisfy the prevailing wage standards."

Thus the department required for administrative purposes that if there be no concentration of 40% or more of workers at the same wage " the prevailing rate of wages for an occupation is the weighted average of the wages received by the middle 50% of the workers in the occupation."

Therefore, the Commissioner for administrative purposes prescribed a definitive application of one part of the statutory scheme. The other part " substantially less favorable ", he met by prescribing that in concentrated employment, i.e., 40% or more workers receiving the same wage, a wage of 10% below that amount is " as a rule " substantially less favorable.

But as to prevailing wages calculated by weighted average, a wider percentage was considered appropriate to determine the question what is " substantially less favorable ".

Wages in this group would be regarded as substantially less favorable if " as a rule " they are (a) " less than the lowest wages of such middle 50% "; or (b) " more than 20% below the prevailing wage rate ", i.e., the weighted average of wages received by the middle 50%. The bulletin outlined the reasons underlying this directive, based on statistical criteria and noted that the need " for invoking this clause will be rare since the wages at the bottom of the middle 50% group will seldom be more than 20% below the prevailing rate."

The case at hand involves the experience of a single worker; but since it brings to the court a sharp difference in viewpoint between the Commissioner and the Unemployment Insurance Appeal Board in application of the statutory formula, it becomes an issue of significance in the general administration of the Unemployment Insurance Law.

Claimant was employed as a " full-charge bookkeeper " in New York City. She lost her job due to a business policy of the employer. She was offered a job at $90 for a 40-hour week which she refused on the ground the wage was too low. The Commissioner determined because of this refusal she was ineligible for unemployment benefits. His initial determination of disqualification was overruled by the Referee and by the Unem-

ployment Insurance Appeal Board which affirmed the Referee. From that determination the Commissioner comes here.

A survey of wage rates for 19,651 full-charge bookkeepers in the record shows an over-all salary range for this occupation running from a low of $40 a week to a high of over $145. There was, however, no single wage rate applicable to 40% of the workers. The salary range of the middle 50% was from $90 to $119.99. The weighted average of the wages received by the workers in the middle 50% group was $103.63. Thus the "prevailing wage" for the group within the Commissioner's formula was $103.63.

On this result and the method by which it was reached the Commissioner and the Appeal Board are in agreement. The board's decision notes: "When such weighted average is the result of a substantial sampling of an occupation in an area, as in the present case, it is a statistically accurate evaluation of the approximate prevailing wage for such occupation in that geographical area."

The difference is that the board is of opinion that 20% is too much to take off the prevailing wage, as the Commissioner's formula requires, to fix a point below which an offer of employment is deemed "substantially less favorable". The board would fix that critical point in such a situation at 10% below the prevailing wage. If the 20% reduction is applied to the facts of the case the $90 offered claimant should have been accepted; if 10% is applied, it was not enough.

It will at once be apparent that this kind of problem involves a consideration of the Commissioner's powers; of the Appeal Board's powers in reviewing the Commissioner's rulings; and of our own powers in reviewing the board's orders. It is clear that neither view is unreasonable, much less arbitrary.

Here is a statutory formula with two elements involved— "prevailing" and "substantially less favorable"—which are intrinsically difficult of application to highly variable conditions of wages and of employment classification. The Appeal Board in its opinion gives some logical support to its view that 10% is the better formula; but in part that view is based on its own prior decisions in which 10% was used, and judicially approved. The base, of course, in these cases was different from the present one.

The Commissioner rationalizes the 20% in his brief; and there is some additional statistical rationalization for it in the bulletin which laid down the formula. But the familiar judicial resolution of such an administrative impasse, that one or the

other solution is so wrong as to be arbitrary, is certainly not open to us here; nor can it be said as a matter of law that either the board's view or the Commissioner's rubs against the grain of the statute.

We look, then, to the statutory powers of the two public authorities, the Commissioner and the Appeal Board. It is clear that the Commissioner had the statutory power to issue the bulletin and to prescribe the 20% formula. He shall have "power to make all rules and regulations   *   *   *   as may be necessary in the administration of this article." (Labor Law, § 530, subd. 1.)

But in the circumstances of any ruling of disqualification actually controverted by an aggrieved claimant, the Referee, although appointed by the Commissioner (§ 535) has power to overrule the Commissioner's determination.

The statutory language fixing the Referee's powers is not only broad in scope, but has a judicial cast. The Referee, so runs the statute (§ 620, subd. 1, par. [b]) may decide "such question or questions and any other issue related thereto" (including a claimant's dissatisfaction with an initial determination). The board's power on appeal is coextensive. It "may affirm or reverse, wholly or in part, or may modify the decision appealed from " (§ 621, subd. 3).

These clauses of power of review, unhampered by delimiting qualifications, are very broad. Our own power of review, in turn, is limited to questions of law and we must take factual determinations the way the Appeal Board leaves them (§ 624).

There are, of course, areas of administrative rulings and directions of the Commissioner within his powers which the Appeal Board is bound to take; since in matters of administrative policy and power the Commissioner and not the board has the legislative delegation. (Cf. *Matter of Perkins [Catherwood]*, 14 A D 2d 185; *Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104.)

But when rights of individuals under the statute are involved where recourse from a ruling of the Commissioner is provided by law to the Referee and the board, the rules of the Commissioner in their impact upon the particular controversy may not be controlling if the board determines in its judicial capacity that the statute has been wrongly construed or if the facts of the particular controversy as found by the Referee and the board are found differently from the way the administrative officer has found them.

If the board's decision is arbitrary, or contrary to law, a different result may be spelled out in court; but if the decision rests on a factual evaluation open to different interpretations, it must be affirmed.

Thus, it seems to us that the decision of the Appeal Board overruling the initial disqualification of the claimant is essentially a determination of fact even though it runs up against an official and reasonable formula promulgated by the Commissioner for the general disqualification of all such claimants. Even the bulletin prescribing the formula states that it is to be followed " as a rule " and this leaves implicit latitude in the facts of particular cases.

Essentially the Commissioner's formula is a systematic method of evaluating facts, i.e., the circumstances in which an offered wage is to be deemed substantially below a prevailing wage. To say this is to say that in a particular controversy the Appeal Board may undo the formula in its factual application to the case in hand.

This, indeed, is at the heart of the board's ruling here: " In the instant case " says its opinion " the salary offered was thirteen per cent less than the prevailing wage. We therefore hold that the wage offered was substantially less favorable to this claimant than that prevailing for similar work in the locality." That is a factual judgment on the problem of what is a substantially lower wage in claimant's case; it is within the power of the board; and it is not lost because the ruling of disqualification followed a formula approved by the Commissioner

The determination should be affirmed, without costs.

HERLIHY, J. (dissenting). While section 593 (subd. 2, par. [d]) of the Labor Law is an integral part of the Unemployment Insurance Law, its application to a given state of facts must be tested to determine if the result comes within the reasonably contemplated purpose, intent and meaning of the law. If such is not the guide, the public policy of the State (§ 501) for the enactment of this social legislation might be defeated and there would be no control over the factual issues which involve " prevailing wage ".

The Commissioner in this case decided that claimant's refusal to accept a starting salary of $90, where the prevailing wage was established at $103.63, did not constitute good cause within the framework of the section. The Appeal Board reversed and determined that such offer was " substantially less favorable to the claimant than the prevailing wage " and that claimant was

entitled to benefits. The conflict was due to the application of different percentages as applied to the prevailing wage rate.

Paragraph (d) of subdivision 2 of section 593 sets up a two-pronged test for determining whether a claimant has refused a job for good cause on the basis of an offered wage. There is good cause for such refusal where " the wages or compensation * * * offered are *substantially less favorable to the claimant* than those *prevailing* for similar work in the locality, *or* are such as tend to depress wages " (italics supplied). There is no claim in this case that the offered wage here tends to " depress wages ". The claim is predicated solely on the basis that claimant was offered a wage " substantially less favorable " than that " prevailing " in the occupation in claimant's locality.

We said in *Matter of Sellers* (*Catherwood*) (13 A D 2d 204), that the term " prevailing " wage had to be construed in the light of the " general intent, purposes and objectives " of the Unemployment Insurance Law. What we said there in reference to the term " prevailing " wage applies equally to the phrase " substantially less favorable ". The latter concept supplements the former and is an integral part of the first test prescribed by paragraph (d) for a determination whether a claimant has refused a job for good cause on the basis of an offered wage.

What is " substantially less favorable than the prevailing wage " must be literally and narrowly construed if any reasonable and practical application is to be given to the law. In *Matter of Sellers* (*Catherwood*) (*supra,* pp. 205, 206), this court said: " The primary purpose of the law is to ease the hardship of involuntary unemployment due to economic conditions or other conditions beyond the control of the employee. It was not intended as a substitute for a minimum wage law. * * * It was not intended to regulate wages — it was intended as a substitute for the complete loss of wages forced upon an employee."

These legal principles applied to the decision of the board convince me that the determination on this record was contrary to the intent and meaning of the law and that the determination of the Commissioner, that the offered wage was not " substantially less favorable " to this claimant than that " prevailing " in the locality, was founded upon a " reasonable basis in law " (*Matter of Perkins* [*Catherwood*], 14 A D 2d 185, 187) and his decision should be affirmed.

Coon, Gibson and Taylor, JJ., concur with Bergan, P. J.; Herlihy, J., dissents in a memorandum.

Determination affirmed, without costs.